IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2001

**STATE OF TENNESSEE v. JANICE FLOYD**

**Direct Appeal from the Circuit Court for Chester County**
**No. 99-47 and 99-48      Donald H. Allen, Judge**

_____

**No. W2000-02236-CCA-R3-CD  - Filed July 20, 2001**

_____

The appellant was found not guilty by reason of insanity on two counts of second degree murder pursuant to Tennessee Code Annotated section 39-13-210, and on one count of aggravated arson pursuant to Tennessee Code Annotated section 39-14-302.  After the court found the appellant not guilty by reason of insanity, the appellant was committed to Western Mental Health Institute for diagnosis and evaluation pursuant to Tennessee Code Annotated section 33-7-303.  At the conclusion of the appellant's diagnosis and evaluation, the doctors conducting the evaluation determined that the appellant was not committable under the Tennessee Code Annotated and refused to sign certificates of certification for the appellant to be involuntarily committed.  At the end of the initial sixty (60) day diagnosis and evaluation period, the doctors at Western Mental Health Institute sought to have the appellant released into a mandatory outpatient treatment program.  A hearing was conducted after the ninety (90) day mandatory release date, and the trial court ordered that the appellant be returned to Western Mental Health Institute.  The appellant brought this appeal asserting that the trial court erred in ordering her continued detention after the expiration of the maximum ninety (90) day commitment period, and that such detention violates her rights.  The state in its brief concedes error.  After a thorough review of the issue presented in this case, we agree with the appellant and the state that the trial court erred.  This case is remanded to the trial court for further action consistent with the instruction set forth herein.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOE G. RILEY and ROBERT W. WEDEMEYER, JJ., joined.

George Morton Googe, District Public Defender, and Vanessa D. King, Assistant Public Defender, for the appellant, Janice Floyd.

Paul G. Summers, Attorney General and Reporter; Pamela A. Hayden-Wood, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Shaun Alan Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In November 1999, the appellant was indicted on two counts of second degree murder and on one count of aggravated arson. On January 3, 2000, counsel for the appellant filed a motion seeking to have the appellant evaluated to determine her competency to stand trial and her mental condition at the time of the alleged offenses. On February 2, 2000, Pathways Mental Health Facility notified the trial court that a determination could not be made on an outpatient basis and that a more extensive evaluation would have to be conducted. On February 15, 2000, the trial court ordered the appellant to undergo an in-house evaluation at Western Mental Health Institute. On March 24, 2000, the trial court was notified by Western Mental Health Institute that the appellant was competent to stand trial and that the appellant's mental state at the time of the alleged offense supported an insanity defense.

On April 27, 2000, the trial court entered an order finding the appellant not guilty by reason of insanity. The appellant was committed to Western Mental Health Institute pursuant to Tennessee Code Annotated section 33-7-303(a). On June 19, 2000, Western Mental Health Institute notified the trial court that appellant did not meet the standards for commitment and recommended mandatory outpatient treatment. On July 7, 2000, the District Attorney's office filed a statement opposing the release of the appellant. On August 17, 2000, a hearing was held and the trial court denied the appellant's release.

## Facts

The appellant, Janice Floyd, age thirty (30), was indicted on two counts of second degree murder and on one count of aggravated arson in Chester County. On the evening of May 18, 1999, a fire broke out at a home the appellant shared with her mother, father, and siblings. The appellant's mother and brother failed to leave the house when they were warned of the fire and were killed.

In October 1999, the appellant confided in her sister that she was the one who started the fire. At the urging of her sister, the appellant confessed the crimes to an investigator. The appellant was subsequently arrested, indicted, and held in jail for trial. While the appellant was in jail awaiting trial, arrangements were made for her to go to Pathway Mental Health Facility to be evaluated on an outpatient basis to determine her competency to stand trial and her mental condition at the time of the alleged offenses. Pathways Mental Health Facility determined that it could not properly evaluate her and recommended that she be committed to Western Mental Health Institute on an inpatient basis to have a proper evaluation conducted.

During the appellant's mental evaluation, the appellant explained to staff members at Western Mental Health Institute that since the age of four (4) she had been sexually abused by her father and had been hospitalized in a mental health facility on seven (7) prior occasions. The

appellant was diagnosed with auditory command hallucinations that commanded her to kill herself. The appellant also stated that on the evening of the fire her father had sexually abused her, and after the incident she went outside into the carport where she saw some of her father's favorite clothes drying on a rack. The appellant stated that she was hearing voices that were telling her to burn the clothes. After setting the clothes on fire, the fire spread to the home and engulfed it, killing the appellant's mother and brother.

On March 24, 2000, the trial court was notified by Western Mental Health Institute that the appellant was competent to stand trial. The trial court was also notified in the same letter that the appellant's mental state at the time of the alleged offenses supported an insanity defense. Finally, the letter from Western Mental Health Institute indicated that the defendant did not meet the standards for judicial commitment pursuant to Tennessee Code Annotated section§ 33-6-104 and 7-303.

On April 27, 2000, the matter came before the trial court. The State and the appellant stipulated that the appellant "did kill Mary Floyd and Billy Floyd during the perpetration of aggravated arson." It was further stipulated that the appellant "meets the criteria for the insanity defense as provided in Tennessee Code Annotated § 39-11-501." The State recommended that the appellant should be declared not guilty by reason of insanity. Based upon the report submitted by doctors at Western Mental Health Institute, the recommendation of the State, and the agreement of the appellant, the trial court accepted the recommendation of the State and found the appellant "not guilty by reason of insanity." This triggered the appellant's initial period of confinement at Western Mental Health Institute for the purpose of diagnosis and evaluation pursuant to Tennessee Code Annotated section 33-7-303.

On June 19, 2000, after the completion of the diagnosis and evaluation, the trial court was notified by Western Mental Health Institute that the appellant did not meet the criteria set out by Tennessee Code Annotated section 33-6-104 for involuntary commitment, and requested that the trial court order mandatory outpatient treatment. A written, detailed Proposed Outpatient Treatment Plan was included. The District Attorney's office did not file any pleadings until July 7, 2000, when it filed a statement in opposition to the appellant's release. No certificates certifying the need for commitment were filed. A hearing was scheduled for July 25, 2000; however, it was rescheduled for August 17, 2000.

On July 25, 2000, the trial court was notified by Western Mental Health Institute that the appellant would be discharged on July 26, 2000, the ninetieth day of her commitment and the date set for mandatory release by Tennessee Code Annotated section 33-7-303(a). The court entered an order the same day ordering that the appellant remain in the custody of Western Mental Health Institute until the rescheduled hearing on August 17, 2000. The appellant remained in the custody of Western Mental Health Institute until the August 17, 2000, release hearing as ordered.

The appellant's release hearing took place as re-scheduled on August 17, 2000. A treating psychologist from Western Mental Health Institute testified that he did not believe that the appellant

posed any danger to others, but that if the appellant failed to take her medication she might become a danger to herself. A treating psychiatrist from Western Mental Health Institute also testified, stating that the appellant was not committable. The psychiatrist testified that "with [the appellant's] current [clear] thinking, she could definitely follow [a mandatory outpatient treatment plan]." At the conclusion of the hearing, the trial court denied the appellant's release from Western Mental Health Institute. The trial court stated as its reason for denial of the appellant's release that it was concerned: 1) that there would not be adequate supervision over the appellant; 2) with how the appellant would get to and from treatment appointments at the outpatient program; 3) that the appellant would not take her medication as directed; and 4) that the appellant would not be able to purchase her medication. This appeal followed. The state now concedes that the statutory requirements for continued commitment were not met.

## Analysis

The issue this court is called upon to address in this appeal is whether the trial court erred in ordering the appellant's continued detention after the expiration of the maximum ninety (90) day commitment period. Jurisdiction to hear the issues brought by the appellant in the instant case is conferred upon this court by Tennessee Code Annotated section 33-7-303(d). Having jurisdiction to review the issue presented in this appeal and render a decision in the matter, we must conclude that the trial court's continuing detainment of the appellant after the mandatory release date is in error and is a violation of the appellant's rights.

A. Governing Law

We begin our analysis by examining Tennessee Code Annotated section 33-7-303(a), which states that when a person is charged with a criminal offense and subsequently "acquitted of the charge on a verdict of not guilty by reason of insanity at the time of the commission of the offense, the criminal court shall order the person detained for diagnosis and evaluation" in a hospital or treatment center for a period of at least sixty (60) days, but not longer than ninety (90) days. Tennessee Code Annotated section 33-6-104(c) continues by stating that "no respondent may be judicially committed under this statute unless two (2) licensed physicians file in the commitment proceeding certificates of need for care and treatment certifying that the respondent satisfies the requirements of subdivisions 1-4 of subsection (b)." Thus, as is plainly clear from both of the above statutes, the minimum period of time that a court may commit a person who has been acquitted of a crime on grounds of insanity is sixty (60) days, and the maximum period of time such person may be judicially committed is ninety (90) days - absent procedural certification of the acquitted by two licensed physicians who have found that the acquitted falls within the parameters of Tennessee Code Annotated section 33-6-104(b).

This court has addressed the issues raised in the instant case in the past. In Brown v. State C.C.A. No. 14, 1990 WL 40998 (Tenn. Crim. App., filed April 11, 1990, at Jackson), the appellant was found not guilty by reason of insanity and was committed to a mental health institution for diagnosis and evaluation pursuant to Tennessee Code Annotated section 33-7-303(a). As with the

instant case, "the [institution] notified the trial court that the [appellant] did not meet the standards for involuntary commitment and recommended mandatory outpatient treatment." An outpatient plan was submitted to the trial court. The trial court, however, rejected the outpatient plan and ordered the appellant to be returned to the institution until a plan could be formulated that met with the trial court's approval. No certificates of commitment were filed by two licensed physicians as required by statute. This court ultimately concluded that the detainment of Appellant Brown, when the "substantive prerequisites [of the Tennessee Code Annotated] were not met," violated her rights under the Tennessee Code Annotated. Brown, 1990 WL 40998, at *4-5.

B. Case Analysis

Turning to the facts in the instant case, testimony was given at the appellant's release hearing by treating doctors that the appellant did not meet the requirements under the Tennessee Code Annotated for involuntary commitment. Further, it is undisputed that the state did not file certificates by two licensed physicians for the involuntary commitment of the appellant. As in Brown, it is apparent that the substantive prerequisites for involuntary commitment were not met in the instant case. The appellant's statutory rights were violated, as is conceded by the state.

The trial court makes it manifestly clear that the reason for the continued commitment of the appellant is due to its concern for the safety of the public and the appellant. The trial court found such fear in the possibility that the appellant will fail to attend her outpatient treatment program and fail to take her medication as directed, and thus, reasons that she could become a threat to herself and society. Testimony, however, does not support this concern. In fact, the psychiatrist testifying on behalf of the appellant stated that "with [the appellant's] current [clear] thinking, she could definitely follow [a mandatory outpatient treatment plan]." This is clear evidence that runs contrary to the trial court's concerns about the appellant not taking her medicine as required. We note that the state offered no proof to rebut the expert medical testimony of the doctors working with the appellant at Western Mental Health Institute, nor did the state offer any proof to show that the appellant posed a substantial risk of serious harm to herself or others. In fact, in the record, the state admits that it was unable to proffer any evidence to support its argument against the release of the appellant. Indeed, the evidence set forth above, or the lack thereof, fails to support the trial court's denial of the appellant's release into a court ordered outpatient treatment program. Upon this record the evidence preponderates against the trial court's findings.

Prior to concluding this case, we pause to commend the trial court for its concern for the welfare of society and the appellant. Indeed, we believe that the trial court attempted to act in the best interest of all involved. However, concerns over the mere possibility of a breakdown in the mandatory outpatient treatment plan do not topple statutory requirements for involuntary commitment. Indeed, persons such as the case worker to be assigned to the appellant, the staff at the appellant's outpatient treatment program, and Mr. Maness - the individual with whom social services made living arrangements for the appellant, all serve to ensure the appellant's compliance with her outpatient treatment plan.

With regards to the proposed living arrangements of the appellant upon release, this court sees no valid reason to question the living arrangements of the appellant as made by the Department of Social Services. The only accredited testimony that weighed against the proposed living arrangement was testimony that Mr. Maness was working out of town. Mr. Maness, however, also testified that he planned to quit his out of town work after January 2001. With regards to the claims that there existed a hostile relationship between the appellant and Mr. Maness at one time, the trial court obviously chose not to accredit such testimony, and this court sees no reason to disturb that decision.

## CONCLUSION

We sympathize with the state's and the trial court's dilemma and concern over safety to the public. However, Tennessee Code Annotated section§ 33-7-303 and 6-103 expressly set forth the procedures that must be followed. When properly followed, the proper balance is struck in an attempt to protect the public, while at the same time protect the ward from unjustified detention.

Having concluded that the appellant's statutory rights were violated, this court finds that the trial court erred by ordering the continued detention of the appellant after the maximum ninety (90) day period for diagnosis and evaluation. Thus, this matter is remanded to the trial court for an order of release of the appellant to the outpatient treatment plan. If the state believes the appellant is committable at some future time, it may file the appropriate documentation required by Tennessee Code Annotated section 33-6-103. *See* Brown, 1990 WL 40998, at *4-5 (two judges recommending any further proceedings must be pursuant to Tennessee Code Annotated section 33-6-103).

_____
JOHN EVERETT WILLIAMS, JUDGE